Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3638 | **DATE** | 10/21/2004 |
| **CASE TITLE** | Phelan vs. Cook County, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER. Defendants' motion for summary judgment as to Count I-VIII is granted and Counts IX, X, and XI are dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 22 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 64 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Laura Phelan,  )
              )
    Plaintiff, )
              )
    v.        )   01 C 3638
              )   Judge George M. Marovich
Cook County,  )
Claudette Giles, Paris Partee, )
John Alsterda, Lawrence Chasin, )
Jack Callaghan, Ronald Jotzat, )
John Hussak, and Ronald Silva, )
              )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Laura Phelan ("Phelan") filed an eleven-count Complaint against Cook County ("Cook County"); Claudette Giles ("Giles"); Paris Partee ("Partee"); John Alsterda ("Alsterda"); Lawrence Chasin ("Chasin"); Jack Callaghan ("Callaghan"); Ronald Jotzat ("Jotzat"); John Hussak ("Hussak"); and Ronald Silva ("Silva") (collectively "Defendants"). Phelan brought six counts against Cook County for: sexual harassment (Count I), gender discrimination (Count II), retaliation (Count III), and race discrimination (Count IV) in violation of Title VII of the Civil Rights Act of 1964; and sexual harassment (Count V), and retaliation (Count VI) in violation of 42 U.S.C. § 1983. Phelan brought two counts against Giles, Partee, Alsterda, Chasan, Callaghan, Jotzat, Hussak, and Silva for sexual harassment (Count VII), and retaliation (Count VIII) in violation of 42 U.S.C. § 1983. Phelan also brought three state claims: assault and battery

against Jotzat and Hussak (Count IX), and against Silva (Count X), and intentional infliction of emotional distress against Jotzat and Hussak (Count XI).

Defendants move for Summary Judgment for the following counts: Counts I-VIII, and XI.[1] For the reasons set forth below, Defendants' Motion for summary judgment on Counts I-VIII is granted. The remaining state claims are dismissed without prejudice.

## BACKGROUND

The Complaint alleges the following relevant facts which, for the purposes of deciding this motion, are taken as true. Hishon v. King & Spaulding, 467 U.S. 63, 73 (1984). On March 1, 1999, Phelan, a Caucasian woman, began working as a mechanical assistant in the boiler room (the "Powerhouse") of the Building and Grounds Department of Cook County Hospital. Phelan did not receive an orientation packet or a sexual harassment policy when she was hired. Phelan's immediate supervisor was Callaghan. The supervisors of the Buildings and Grounds Department were Alsterda and Chasin. Immediately after being hired, Phelan was subjected to sexually offensive and inappropriate comments, sexual propositions and solicitations, sexually inappropriate touching, and displays of pornographic pictures and magazines. Phelan asked Callaghan on several occasions for a transfer out of the department. Phelan complained to Callaghan that she felt that she was being harassed, but she did not cite any specific incident or identify any specific person regarding the complaints. Callaghan told Phelan that he could not help her, but he referred her to the Human Resources Department.

---

[1] Despite the fact Defendants use the term "dismiss" throughout their Partial Motion for Summary Judgment, it is clear from their briefs that Defendants actually move for summary judgments on all counts.

2

Phelan then informed members of the Human Resources Department ("HR") (including Giles, a supervisor of the hospital's Human Resources Department; Partee, an assistant administrator at the Cook County Hospital and second in command in HR; and Lucia Kelly, an administrative assistant for the department) of the harassment. Partee and Kelly were responsible for investigating charges of sexual harassment. Phelan met with Kelly on April 20, 1999 and told Kelly that the men in her department were sexually harassing her and that she felt uncomfortable with her working environment due to their behavior and remarks. Phelan stated that she felt alienated because she could not get proper assistance or information from the men to do her job, and, therefore, she was concerned about being terminated. Kelly told Phelan to document the incidents in a log. However, Phelan did not immediately schedule another meeting with Kelly because Callaghan had directed Phelan to no longer contact Kelly.

Phelan met with Kelly on July 14, 1999, about two months after their first meeting. Kelly had done nothing since their first meeting regarding the complaints of sexual harassment. Kelly stated that she was waiting for Phelan to get back to her with additional information. During this meeting, Phelan showed Kelly a bruise on her thigh, stating that on July 9, 1999, two men had pulled her chair and slammed her into a desk. Kelly informed Broussard, her supervisor, of the incident and Broussard agreed that Kelly should escort Phelan to the Employee Health Services ("EHS"). Kelly informed the receptionist at EHS that Phelan needed to fill out an incident report and see a doctor. Phelan also met with the Cook County Hospital Police Department (the "CCHPD") and gave a statement regarding the incident. The CCHPD, which has jurisdiction over the campus and surrounding area, is made up of sworn officers who have the power to arrest.

3

The CCHPD prepared a photo line-up for Phelan to view and identify the assailants. Phelan signed misdemeanor complaints against Hussak and Jotzat, the two plumbers who assaulted her. The CCHPD informed Phelan that she was to report the incident to the Chicago Police Department (the "CPD") in order to further pursue her case. Phelan then went to the CPD and spoke with someone about the incident, but she failed to file a report. Alsterda, Callaghan's supervisor, suspended the two plumbers without pay until the allegations were resolved. Alsterda told Callaghan to call Phelan and tell her not to report to work until the situation was resolved and that she would be paid until they had resolved the situation.

On August 5, 1999, Phelan met with Giles and Partee and agreed to a transfer to the CORE Center, where she was expected to perform duties as a medical assistant. Phelan states that she was threatened with termination if she did not sign this agreement. Phelan also alleges that Giles and Partee, who are African-American, made references regarding Phelan's race during the meeting. After her reassignment to the CORE Center, Phelan made several complaints to Callaghan about her co-workers. At one point, Callaghan called HR and informed Broussard that Phelan had been crying because the men were yelling at her. Phelan states she was attacked by Silva and he placed her in a headlock. Phelan alleges that Hussak was present during the attack. She states that she informed Callaghan of the incident and that Callaghan stated that he would take care of it. Callaghan contends that Phelan did not inform him of the incident. The next day Silva attacked her in an elevator and again placed her in a headlock. Chuck Gunther, one of Phelan's supervisors at the CORE Center, was present when the incident occurred and pulled Silva off of Phelan. Phelan stated that she informed Callaghan of the attack,

4

however, Callaghan contends that he knew nothing about the incident. Phelan did not tell anyone else about the two incidents. She did not report the incidents to HR, the CCHPD or the CPD. Phelan states that she complained to Broussard and Lorraine Jackson of HR, but did not file a formal complaint. However, Giles, Broussard, and Kelly, contend that they were not aware of these incidents of sexual harassment.

In July 2000, Phelan called in sick to work because she was emotionally and physically distraught over the conduct of Defendants Cook County, Giles, Partee, Alsterda, Chasin, and Callaghan and their failure to protect her from the sexually abusive, hostile, discriminatory, and retaliatory behavior. On June 30, 2000, Phelan's attorney sent Cook County a letter stating that Phelan was unable to gain access to the building because it was locked and mentioned Phelan's recent absences, which were a result of the "sexual harassment issues at work." (Exhibit I). Several memos were exchanged between Alsterda, Chasin, Callaghan, and Giles regarding the alleged sexual harassment incidents, through which they tried to determine whether any complaints had been filed and whether the incidents had occurred. An investigation was not conducted regarding these allegations.

In August 2000, Phelan applied for medical leave of absence because of her inability to work and her emotional distress. Defendant Cook County denied Phelan's request for medical leave of absence. Beginning on August 3, 2000, Phelan was absent from work for 58 days. On October 11, 2000, a pre-disciplinary hearing was held to determine whether Phelan was to be terminated due to her recent absences. Callaghan sent Phelan a letter on September 20, 2000 notifying her of the hearing. Phelan attended the meeting but did not provide a reason for her absences and Cook County decided to

terminate her. In an appeal hearing held on February 9, 2001, Cook County reversed its decision to terminate Phelan and reinstated her to her current position at the CORE Center.

## DISCUSSION

I. Standard for a Motion for Summary Judgment

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When making such a determination, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994).

II. Sexual Harrasssment

Cook County contends that its Motion for Summary Judgment regarding Phelan's Title VII sexual harassment claim should be granted since Cook County took remedial actions in response to Phelan's complaints of sexual harassment during her assignment at the Powerhouse. Cook County further contends that an adverse employment action was not taken against Phelan since she was not terminated. Phelan agreed to a transfer and was subsequently reassigned to the CORE Center.

> An employer is subject to vicarious liability to a victimized employee
> for an actionable hostile environment created by a supervisor with
> immediate authority over the employee. When no tangible employment
> action is taken, a defending employer may raise an affirmative defense to
> liability or damages, subject to proof by a preponderance of the evidence.
> The defense comprises two necessary elements: (a) that the employer
> exercised reasonable care to prevent and correct promptly any sexually
> harassing behavior, and (b) that the plaintiff employee unreasonably failed
> to take advantage of any preventive or corrective opportunities provided by
> the employer or to avoid harm otherwise.

Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998). However, an affirmative defense is not available when a tangible employment action, such as discharge, demotion, or undesirable reassignment, is taken as a result of the harassment. Id. at 777. "An adverse employment action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job." Hill v. American General Finance, Inc., 218 F.3d 639, 645 (7th Cir. 2000). Furthermore, an employer must have notice or knowledge of the harassment in order to be held liable. Durkin v. City of Chicago, 341 F.3d 606, 612 (7th Cir. 2003). "For a plaintiff to survive summary judgment on a sexual harassment claim, she must show she provided the employer with enough information so that a reasonable employer would think there was some probability that she was sexually harassed." Id.

Cook County, for the purpose of summary judgment, does not deny that Phelan was sexually harassed in her original assignment. However, Cook County contends that it took remedial actions by removing Phelan from the original hostile work environment and that it did not have sufficient notice of the recent incidents of sexual harassment. Conversely, Phelan claims that Cook County took adverse employment actions against her as a result of her complaints by transferring her to an undesirable assignment at the

7

CORE Center and by ultimately terminating her employment and it should therefore be estopped from claiming that it took remedial actions. Although the transfer may not have been the most ideal solution for Phelan, "not every unwelcome employment action qualifies as an adverse action. Negative reviews, a change in job title, an increased distance to travel to work, or a <u>lateral transfer</u> do not, by themselves, qualify." Id. (emphasis added). There is no evidence to indicate that her reassignment to the CORE Center was anything besides a lateral transfer. Furthermore, Phelan states in her deposition that she wanted to be transferred (Phelan dep, p. 222, lines 17-21, p. 223, lines 5-7, 12-14). Phelan also signed a document accepting the transfer to the CORE Center where her job responsibilities would consist of those of a mechanical assistant, the job for which she was originally hired. Although Phelan was terminated in October 2000, she was reinstated in February 2001 and allowed to return to her current position. Thus, Cook County did not take any adverse employment actions against Phelan.

As to her claim of sexual harassment during her assignment at the CORE Center, Cook County did not have sufficient notice of the alleged incidents. "In determining whether an employer had notice of harassment, the reviewing court first determines whether the employer has designated a channel for complaints of harassment . . . where an employer sets up a 'point person' to accept complaints, this person becomes the natural channel for the making and forwarding of complaints. With respect to the extent of the notice given to an employer, a plaintiff cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." <u>Parkins v. Civil Constructors of Illinois, Inc.</u> 163 F.3d 1027, 1035 (7th Cir.

1998). In her deposition, Phelan stated that more harassing conduct occurred after her transfer to the CORE Center. However, Phelan has not provided any documentation of any complaints she allegedly made to HR or to her supervisor. While assigned at the CORE Center, Phelan contends that she complained to Callaghan, Gunter, Broussard, and Jackson, but she did not file a formal complaint. Phelan asserts that she failed to file a complaint regarding the two incidents with Silva because she had been told not to do so by Callaghan. The Seventh Circuit has indicated that "an employee's subjective fears of confrontation, unpleasantness, or retaliation do not alleviate the employee's duty ... to alert the employer to the allegedly hostile environment." Shaw v. AutoZone, Inc., 180 F.3d 806, 813 (7th Cir. 1999). Furthermore, "an employee cannot reasonably delay in pursuing alternative measures to remedy harassment when she should have realized that the means initially chosen to complain were ineffective." Figueroa v. City of Chicago, No. 97 C 8861, U.S. Dist. LEXIS 11498 at *11 (N.D. Ill. July 25, 2000).

Phelan contends that Callaghan did nothing regarding the harassment that was taking place at the CORE Center and that her complaints to Giles, Broussard, and Lorraine Jackson of the Human Resources department did not prompt an investigation of the allegations. However, Phelan did not file a formal complaint. She may not have officially received Cook County's sexual harassment policy, however, her knowledge of the complaint process is evidenced by her prior experience in filing a formal complaint through Lucia Kelly. "An employer is not liable for co-employee sexual harassment when a mechanism to report the harassment exists, but the victim fails to utilize it." Durkin, 341 F.3d 612-613 (7th Cir. 2003). Phelan could have filed a complaint with Kelly, thus giving adequate notice to Cook County of the new sexual harassment claims.

9

Phelan also did not report any of the alleged incidents with Silva to the CCHPD or the Chicago Police Department. "An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees. Of course, it would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee. Thus, notice or knowledge of the harassment is a prerequisite for liability." Parkins, 163 F.3d at 1035. The only evidence of formal notification to Cook County of the complaints is a letter sent by her attorney to Cook County on June 30, 2000 indicating that Phelan had been absent from work due to "recent sexual harassment incidents." (Exhibit I). The letter is the first notice that Cook County received regarding any allegations of sexual harassment taking place at the CORE Center and therefore it had no opportunity to remedy the situation.

The evidence presented shows that Cook County upheld its legal duty to investigate and take remedial actions when presented with allegations of sexual harassment. Therefore, Defendants' Motion for Summary Judgment as to Count I is granted.

III. Gender Discrimination

The next issue the Court must resolve is whether Defendants' Motion for Summary Judgment as to Phelan's Title VII gender discrimination claim should be granted. In an employment discrimination case, a plaintiff can defeat a motion for summary judgment by presenting direct evidence demonstrating discriminatory intent by the defendant or its agents, which must be supported by facts without reliance upon inference or presumption. Mills v. Health Care Serv. Corp., 171 F.3d 450, 454 (7th Cir. 1999). "A plaintiff may also offer indirect evidence through the use of the McDonnell

10

Douglas three-part burden shifting test, which requires the plaintiff to establish a prima facie case showing that the plaintiff: 1) is a member of a protected minority class; 2) was performing her job satisfactorily; 3) was the subject of a materially adverse employment action; and 4) that others outside of the protected class were treated more favorably." Gonzolez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1032 (7th Cir. 1998).

Phelan attempts to provide direct and indirect evidence of gender discrimination by stating that she was the only female mechanical assistant, that Callaghan discussed his intent to terminate Phelan while making remarks regarding her gender, that she suffered adverse tangible employment actions by not being provided the same job opportunities and responsibilities as the men in her original assignment, and that she was subjected to an undesirable reassignment. Phelan's claim fails for two reasons. First, she cannot prove that she was performing her job to the satisfaction of her employer. The Seventh Circuit has held that "an employer is acting with a 'legitimate, nondiscriminatory reason' in terminating an employee who simply fails to report to work and does not adequately explain his absence." Rush v. McDonald's Corp., 966 F.2d 1104, 1115 (7th Cir. 1992). Phelan does not dispute the fact that she was absent from work for 58 days between August 2000 and October 2000. Phelan offered no explanation at the disciplinary hearing regarding the extended absence.

Second, Phelan cannot establish that she was subject to an adverse employment action. She offers no evidence that her transfer to the CORE center was undesirable. She requested a transfer from the Powerhouse, agreed to the transfer to the CORE Center as evidenced by the agreement on August 5, 1999 and her deposition testimony in which

11

she stated that the she wanted a transfer. Phelan's claim that she suffered an adverse employment action through her termination also must fail since she was reinstated and offered return to her current position. See supra § II for further discussion of why her adverse employment action claims fails.

Finally, Phelan states that Cook County intentionally discriminated against her based on her gender because, in direct contrast to her male co-workers: (1) her probationary period was longer; (2) she was required to ask permission to use the restroom and to go to lunch; (3) she was not allowed to leave the premises during lunch breaks; (4) she was not allowed to participate in training; (5) she was not invited to mandatory work related meetings; (6) she did not receive assistance in her job responsibilities from Chasin, Callaghan, and Alsterda; (7) she was assigned different job responsibilities; and (8) she was required to perform minuscule tasks. Phelan's claim that her male coworkers were treated more favorably fails since the allegations do not apply to her current position. The alleged disparate treatment occurred during her assignment at the Powerhouse and prior to her assignment at the CORE Center. Cook County took remedial action and transferred Phelan to the Core Center. Phelan does not allege disparate treatment based on gender in her current assignment at the CORE Center. Therefore, summary judgment is granted regarding Phelan's gender discrimination claim.

IV.   Race Discrimination

Cook County contends that summary judgment should also be granted for as to Phelan's race discrimination claim since she does not provide direct or indirect evidence that race discrimination occurred. Phelan, a Causasian woman, alleges that she has provided direct evidence of race discrimination. First, she states that the assignment to

the CORE Center was undesirable and that she was reassigned because of her race. Second, Phelan contends that Giles and Partee, who are both African-American, made comments regarding her race during the meeting in which she received her responsibilities for her assignment at the CORE Center and signed the contract agreeing to the reassignment. Phelan also alleges that Partee and Giles threatened to terminate her, to continue her probationary period, to drop the investigation of the sexual attack by the two plumbers, and refused to provide her with a locker and a key to the ladies washroom. Phelan contends that the actions of Giles and Partee were due to her race.

Like in a gender discrimination claim, a plaintiff can use either direct or indirect evidence to prove a reverse discrimination case. Mills v. Health Care Serv. Corp., 171 F.3d 450, 454 (7th Cir. 1999). Direct evidence is essentially an admission by the employer that the termination or adverse employment action was due to the employee's race. Id. If direct evidence is unavailable, a plaintiff in a reverse discrimination case must provide indirect evidence by showing "evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against whites and evidence indicating that there is something 'fishy' about the fact of the case." Id. at 455. A plaintiff may alternatively prove "a logical reason to believe that the employer's decision rests on his race or gender, he may shift the burden to the defendant to prove that the challenged employment action was actually based on legitimate, non-discriminatory reasons." Id. at 457. However, "an employer has a legitimate interest in insuring that each employee's work continues at a steady pace to meet the employer's production needs. Reliability and promptness are important considerations in maintaining a work force. It seems self evident that an employer is acting with a

13

'legitimate, nondiscriminatory reason' in terminating an employee who simply fails to report to work and does not adequately explain his absence." Rush v. McDonald's Corp., 966 F.2d 1104, 1115 (7th Cir. 1992). Finally, in order to constitute sufficient evidence of racial animus in support of a claim of disparate treatment, the racial remarks must be relatively contemporaneous to the termination of employment and must be "related to the employment decision in question." Id. at 1116.

Once again, Phelan provides neither direct nor indirect evidence that an adverse employment action was taken against her due to her race. See supra § II for discussing of why her adverse employment action fails. The references made by Giles and Partee regarding Phelan's race at the meeting in which Phelan agreed to the reassignment to the CORE Center do not constitute direct evidence of discrimination since these remarks did not coincide with an adverse employment action. As previously noted, Phelan requested the reassignment and agreed to it by signing the memo on August 5, 1999. Therefore, the reassignment and the requirements that she comply with the rule of the new assignment do not constitute adverse employment actions. Additionally, Phelan does not provide indirect evidence of reverse discrimination. As previously discussed, she cannot prove that she was performing her job to the satisfaction of her employer due to her 58-day absence. Phelan does not establish that she was subject to an adverse employment action since she agreed to the reassignment. Therefore, summary judgment will be granted as to the race discrimination claim.

V. Retaliation

Defendants argue that summary judgment should be granted regarding Phelan's claim of retaliation since she has failed to provide evidence of retaliation. She also fails

14

to provide factual support for her claim that her employer lacked legitimate business reasons for holding her disciplinary hearing. "To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action." Caudillo v. Continental Bank, No. 98-3032, 1999 U.S. App. 17915 at *15 (7th Cir. 1999). Phelan's claim of retaliation fails for two reasons. First, she does not provide any evidence that she suffered an adverse employment action. Her allegations of retaliatory actions through disparate treatment in her assignment are based on the incidents that took place during her Powerhouse assignment. Furthermore, as previously discussed, she agreed to the transfer to the CORE Center and was reinstated to her current position at the CORE Center after the hearing officer at the appeals hearing determined that she was not adequately acquainted with the procedure to report absences. See supra § III.

Second, Phelan has not established the third element of a causal link between her complaints of sexual harassment in July and August 1999 and her termination in October 2000. Phelan admits that she made no formal complaint after August 1999. The evidence indicates that Phelan's performance was substandard due to her 58-day absence, which she does not dispute and for which she offered no explanation at the disciplinary hearing. Furthermore, the length of time between Phelan's formal complaints of sexual harassment, gender discrimination, and race discrimination and the termination is too long to establish a causal link. The Seventh Circuit has found four to five months between filing a complaint and an adverse employment action to be too long to establish a causal link between a complaint and adverse employment action. See Caudillo, No. 98-

15

3032 1999 U.S. App. 17915 at *16 (7th Cir. 1999). In this case, Phelan made her first complaints of harassment in August 1999 and she made informal complaints in July 2000. Three months later, after an allegedly unexplained absence from work, a pre-disciplinary meeting was held in order to address the absences. Therefore, a sufficient causal link between the allegations of sexual harassment and an adverse employment action does not exist in this case.

VI.  Section 1983 Claims of Sexual Harassment and Retaliation

Phelan contends that Cook County's actions through its agents and supervisors reflect a policy, custom, or pattern of official conduct of engaging in and condoning sexual harassment. A local government is liable under § 1983 only where the execution of an official government policy or custom caused the alleged constitutional injury. Monell v. Department of Social Services of New York, 436 U.S. 658, 638 (1978). A municipality cannot be held liable solely because it employs a tortfeasor. Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1996). Therefore, a municipality cannot be held liable under § 1983 based upon the respondeat superior theory. Monell, 436 U.S. at 691. A municipality can be held liable under § 1983 only if: "(1) an express policy, that when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Baskin v. City of Des Plaines, 138 F.3d 701, 704-05 (7th Cir. 1998).

16

Applying this rule to the present case, Phelan does not have a sufficient § 1983 claim for sexual harassment or retaliation claim against Cook County. Cook County has demonstrated that it is intolerant of acts of sexual harassment by implementing the sexual harassment policy. Cook County Hospital investigated Phelan's original complaint and attempted to transfer her to a less hostile work environment.

Phelan's § 1983 claim for sexual harassment against Giles, Partee, Alsterda, Chasin, and Callaghan is also dismissed since "a case in which the governmental entity is sued, there potentially exists an overlapping cause of action . . . the official-capacity claims and the claims against the government entity essentially merge. Thus, an official-capacity suit is, in all respected other than name, to be treated as a suit against the entity." Gianessi v. City of Pekin, 52 Fed. Appx. 265, 267 (7th Cir. 2002). Therefore, Phelan's section 1983 claims against the individual defendants are essentially merged with those against Cook County and fail for the same reasons.

VII. State Claims

In Counts IX, X, and XI of her Complaint, Phelan asserts claims for assault and battery and intentional infliction of emotional distress. Having granted Defendants' Motion for Summary Judgement regarding Phelan's Title VII and § 1983 claims, there is no longer a federal claim pending before this court. Thus, this Court, in its discretion, declines to accept supplemental jurisdiction over Phelan's state law claims of assault and battery and intentional infliction of emotional distress; see Vukadinovich v. Board of Sch. Trustees, 978 F.2d 403, 415 (7th Cir. 1992) ("It is well established that if federal claims are dismissed before trial, the federal district courts should generally dismiss the state law claims as well."); Vakharia v. Swedish Covenant Hosp., 987 F. Supp. 633, 643

17

(N.D. Ill. 1997) ("Ordinarily, if a court rules against a plaintiff on all federal claims short of trial the pendant state law claims are dismissed without prejudice."), aff'd, 190 F.3d 799 (7th Cir. 1999). Accordingly, the Court dismisses Counts IX, X, and XI without prejudice.

VII. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment as to Counts I-VIII is granted and Counts IX, X, and XI are dismissed without prejudice.

Enter:

George M. Marovich
United States District Judge

Dated: Oct 21, 2004